IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| David A. Ramey, Sr., | : | |
| Plaintiff | : | Case No. 2:09-cv-00109 |
| v. | : | Judge Sargus |
| Commissioner of Social Security, | : | Magistrate Judge |
| Defendant | : | |

**ORDER**

This matter is before the Court on plaintiff David A. Ramey, Sr.'s November 24, 2009 objections to Magistrate Judge Abel's November 18, 2009 Report and Recommendation. The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the administrative law judge's determination that plaintiff Ramey is not disabled within the meaning of the Act. The Court further finds for the reasons set out below that plaintiff's objections to the Report and Recommendation are without merit.

Plaintiff Ramey alleges he became disabled in 2003, at age 29, by heart problems, emphysema, migraines, pinched nerves in his back, pain in his lower back muscle, and a "bruise on head that doesn't go away." (R. 80.) The administrative law judge found that Ramey was not disabled because he retained the ability to perform a reduced range of work having light exertional demands.

Plaintiff argues that the opinion of the medical expert who testified at the two hearings before the administrative law judge, Dr. Paul Boyce, was flawed and is not substantial evidence supporting the decision denying benefits. Plaintiff maintains that the administrative law judge erred in failing to include the limitations found by Dr. Robert M. Hess, a neurological surgeon, in his residual functional capacity findings.

Dr. Boyce testified as a medical expert at a September 2007 hearing before an administrative law judge. When the administrative law judge asked him if the record was well enough developed so that he could testify as to plaintiff's impairments, Dr. Boyce responded that Ramey "really needs a physical examination that addresses his use of his left side." (R. 685.) Dr. Boyce recommended that Plaintiff undergo a consultative examination with an orthopedic physician or neurologist concerning Plaintiff's range of motion on his left side and pain resulting from a 2004 surgical operation. (R. 178.) The administrative law judge continued the hearing, and Dr. Hess conducted a disability examination.

The Magistrate Judge fairly summarized Dr. Hess's report:

> Robert M. Hess, M.D. Following the first hearing in this case, the ALJ ordered a consultative examination of Plaintiff. Dr. Hess, a neurological surgeon, examined Plaintiff on November 5, 2007. He reported that Plaintiff had undergone surgery at the age of 7 for congenital aortic stenosis, and that Plaintiff had suffered from chronic obstructive pulmonary disease for many years. (R. 609.) Later, in 2004, Plaintiff underwent in Texas what Dr. Hess concluded was a probable repair of an iatrogenic thoracic aortic aneurysm. (R. 611.)
> Plaintiff reported to Dr. Hess shortness of breath, left arm weakness, left hand weakness, and an inability to drive a car because steering aggravated chest and arm pain. (R. 609.) He stated that he was taking Paxil, Ranitidine, Alprazolam, Dizandine, Hydroxyzine, Metoprolol,

2

aspirin, Effexor, Astelin, Nasonex, Ipratropim Ubromide, and Albuterol. (R. 609-610.) When Dr. Hess examined him, he was wearing a chest brace.

Dr. Hess found that Plaintiff had decreased motor activity in the left shoulder, apparent innervation in the ulnar nerve on the left, and a possible abnormality in the medial cord of the brachial plexus. Plaintiff had decreased sensation in the ulnar nerve distribution and in the radial nerve, somewhat decreased sensation in the median nerve of the left hand, and a marked decrease in his left biceps jerk. He noted that, when Plaintiff's C8 root or ulnar nerve were stimulated in his left hand, Plaintiff felt pain radiating in his chest.

Plaintiff's right upper and lower extremities showed normal strength, and his manipulation, grasp, pinch, and fine coordination were normal on his right side. However, his left upper extremity showed fair strength, his left lower extremity showed good to fair strength, and his foot invertors and evertors showed poor function. Plaintiff showed significantly less grip strength on the left, with marked difficulty picking up coins, using a key, holding cups, or opening jars with his left hand. His range of motion of his right shoulder, cervical spine, dorsal lumbar spine, hips, knees, ankles, elbows, wrists, hands, and fingers were unremarkable. Plaintiff's left shoulder and knee showed some decrease in range of motion. (R. 610.)

Dr. Hess concluded:

It is my diagnostic impression that he has had probable congenital aortic stenosis which was operated on at the age of 7. How the procedure was done and the surgeon is unknown. Dr. Hosier was the cardiologist at the Children's Hospital at the time. Secondly he has had a probable repair of an iatrogenic thoracic aortic aneurysm. Post-operative complication was paralysis of the recurrent laryngeal nerve on the left and he had a subsequent procedure in his vocal cords to regain his speech. He also has chronic obstructive pulmonary disease; whether this is related to asthma or whether this is related to core pulmonale, I don't know. He is being treated appropriately.

In addition to this, he has aberrant innervation regeneration of nerves, probably within the brachial plexus in the cords of the brachial plexus following his chest surgery on the left side and he has had difficulty with his recurrent laryngeal nerve which apparently was injured at the time of his second surgery. I have also included for you the work related ability that he shows today. Much of this is based upon the fact that he has chronic obstructive

3

> pulmonary disease in addition to the cardiac and aortic problems in the past.
>
> (R. 611.)
>
> Dr. Hess also filled out a form functional capacity evaluation. It articulated the same left-side restrictions which he stated in his written opinion. (R. 612-613.) In addition, he provided a "medical source statement of ability to do work-related activities". (R. 616.) In it, he opined that Plaintiff could occasionally lift up to 20 lbs., occasionally carry up to 10 lbs., sit or stand for 2 hours or walk for 1 hour at one time, and sit for four hours or stand for 2 hours or walk for 2 hours in a work day. (R. 617.) He also opined that Plaintiff could perform no work-related activities with his left hand, with the except of occasional fingering. (R. 618.) Dr. Hess found that Plaintiff could operate foot controls with his right foot frequently, but with his left foot only occasionally. Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, or crawl, but could never climb ladders or scaffolds or crouch. (R. 619.) He could not read very small print or ordinary newspaper or book print, and had difficulty reading and spelling.
>
> Dr. Hess also made certain findings regarding Plaintiff's hearing. He stated in his written opinion that Plaintiff had "marked decrease in hearing in his left ear", though he did not state a specific basis for this finding. (R. 610.) In the medical source statement, he noted that Plaintiff's impairments affected his "ear & hearing". (R. 619.) He also stated that Plaintiff's tolerance for exposure to environnmental noise was limited to "Quiet (Library)", though again without elaboration. (R. 620.)

November 18, 2009 Report and Recommendation, Doc. 16, at pp. 4-7. The Magistrate Judge fairly summarized Dr. Boyce's testimony at the two hearings:

> <u>Dr. Paul Boyce, M.D.</u> Dr. Boyce was the testifying medical expert at both hearings in this case. At the first hearing, the following exchange took place:
> Q. Is this record developed well enough that you could tell me about the listings and/or any sort of limitations caused by a severe impairment?
> A. Yes and no. I'm sorry, Your Honor.
> Q. Do we need more testing done?
> A. He really needs a physical examination that addresses his use of his left side. There is no thorough exam in this record in spite of the intensity on a lot of records that anybody has really

4

    examined his left side and, and looked at range of motions of shoulder, use of hands, et cetera. It hasn't been done.
Q. Okay. So we need a current consultative examination –
A. Yes.
[...]
Q. Now are there certain neurological issues that are involved with the ribs and whatever was done in, on –
A. Well, Your Honor, the issue here would be that when you do a thoracotomy, which means that you make an incision between ribs, that you can create some problems with discomfort, et cetera. But it would, the real issue can become, it, it's not, the nerve issue could be a localized nerve tissue within the chest wall itself. It would not be something that would be actually involving the left upper extremity. The more, bigger issue is the use of the left upper extremity because of thoracotomy pain.

(R. 684-685.)

  At the second hearing, Dr. Boyce asked one question of the Plaintiff, and then testified that the record was now well enough developed that he could render an opinion concerning Plaintiff's limitations. (R. 648.) He stated that Plaintiff had suffered from a congenital defect of the aorta as a child, which had been surgically corrected, but that an aneurysm later developed in the same place and was corrected by a second surgery in 2004. (R. 648-649.) Dr. Boyce noted that Plaintiff suffered from chronic obstructive pulmonary disease, as well as from a bicuspid aortic valve, and discussed Plaintiff's diminished pulmonary function. (R. 650-651.) He concluded that Plaintiff's abnormal pulmonary function was "non-severe" and that "the real issue is going to become the chest wall pain, which can be an issue when somebody's had multiple thoracotomies, there's about chest wall pain." (R. 654.) He noted that "the pain issue becomes a credibility issue, which falls in your province, Your Honor." (R. 654.)

  The ALJ then asked Dr. Boyce for his opinions on Plaintiff's physical residual functional capacity. Dr. Boyce addressed this issue in the context of evaluating Dr. Hess' consultative examination report. He was sharply critical of the report, stating "I'm going line by line because I just, I have problems with this study, with this report." (R. 656.) Dr. Boyce stated that no objective evidence supported Dr. Hess' opinions concerning Plaintiff's diminished nerve sensation or left lower extremity strength. (R. 656.) He also opined that Dr. Hess' findings of variant innervation were an unfounded supposition, and that there was no evidence to support Dr. Hess' conclusions that Plaintiff's cardiac problems were restrictive. (R. 657.)

5

> Dr. Boyce then offered his own residual functional capacity evaluation. He opined that Plaintiff could lift 20 pounds occasionally or 10 pounds frequently with either arm. He found no restrictions on standing, walking, sitting, or use of Plaintiff's lower extremities. Plaintiff had no restriction in his ability to push or pull with his right arm, but could use his left only occasionally. Dr. Boyce stated that Plaintiff should not climb ropes, ladders, or scaffolds, and should not crawl, but could bend, crouch, balance, or climb ramps and stairs frequently. He found no manipulative restrictions for Plaintiff's right hand, but stated that the left could only occasionally perform grasping or fine manipulation. (R. 657-658.)
>
> Dr. Boyce also disagreed with the degree of severity of the environmental noise restriction that Dr. Hess found, stating:
>
>> A. Well, there's no visual restrictions, he does have noted in Exhibit 10F, page two, a report from an ENT and on 6/16/05 that he reported some hearing problems on his left. They did an audiogram, we do not have the actual graph, what we have is the, was a conclusion in the Biser report that he had bilateral high sensory neural loss at 4,000 cycles per second bilaterally. That is generally outside the normal hearing range the neurological surgeon said, put him in a flat environment and a high frequency loss of that nature, that, that excessive I would say he should probably be in an office environment but not in high frequency such as a foundry or around airplanes, that sort of thing. So there'd be a little, little restriction on his ears.
>
> (R. 659.)

November 18, 2009 Report and Recommendation, Doc. 16, at pp. 7-9.

Plaintiff argues that Dr. Boyce failed to articulate a good reason to discount Dr. Hess's opinion about Ramey's residual functional capacity. Specifically, plaintiff argues that Dr. Boyce testified at the first hearing that there was not sufficient evidence in the record to evaluate Ramey's left side, the range of motion in his left shoulder, and his ability to use his left hand. At the second hearing, plaintiff asserts, Dr. Boyce totally rejected Dr. Hess's report--both his objective findings and his conclusions--and gave a residual functional capacity assessment that found no support in the record. The

6

Magistrate Judge rejected the argument and concluded there was substantial evidence supporting the administrative law judge's decision:

> Dr. Boyce and Dr. Hess
> 
> The Commissioner's regulations provide that he will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). A physician who examined a claimant only once is not a treating source entitled to presumptive weight. *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed.Appx. 496, 506-507 (6th Cir. 2006). Moreover, where an examining physician's opinion is contradicted by another doctor, the Commissioner must determine credibility and resolve the conflict. *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009), citing *Thomas v. Barnhart*, 278 F.3d 947, 956-957 (9th Cir. 2002). If the Commissioner does reject the opinion of an examining doctor, even because it is contradicted by another doctor, he must do so for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995).
> 
> The situation at bar is unusual in that here the testifying medical expert, Dr. Boyce, testified that a specialized physical examination was required before the record would be sufficiently well developed for him to offer an opinion about the severity of Plaintiff's impairments. Boyce testified specifically that Plaintiff "really needs a physical examination that addresses his use of his left side", performed by an orthopedic physician or neurologist. (R. 685-685.) Such an opinion was obtained from Dr. Hess. Dr. Boyce testified that Dr. Hess' examination report was what he had requested. (R. 634.) Moreover, he stated that, with Dr. Hess' report now available, the record was now well enough developed that he could render an opinion. (R. 648.)
> 
> However, Dr. Boyce strongly disagreed with Dr. Hess' findings, stating that he was addressing it "line by line because ... I have problems with this study... I really have trouble with this report". (R. 656.) He opined that Dr. Hess' conclusions as to Plaintiff's residual extremity strength were unfounded, that he disagreed with Dr. Hess' finding that Plaintiff suffered from a variant innervation, and that Dr. Hess' opinions on Plaintiff's cardiac problems were not based on objective evidence. (R. 656-657.) Dr. Boyce offered an opinion on Plaintiff's hearing restrictions that differed from Dr. Hess' opinion, though he did not directly challenge Dr. Hess. (R. 659.) The ALJ adopted Dr. Boyce's findings, including his criticism of Dr. Hess:

7

> Dr. Boyce criticized the findings of consultative examining physician Dr. Hess. For example, Dr. Boyce questioned the finding of "aberrant innervation regeneration of nerves" made by Dr. Hess. According to Dr. Boyce there is no evidence of such abnormality. Based upon his review of the evidence Dr. Boyce limited the claimant as follows...

(R. 18.) The ALJ also deemed Dr. Hess' findings "less than credible". (R. 20.)

Plaintiff erroneously argues that, in rejecting Dr. Hess' opinion, Dr. Boyce was rejecting the evidence necessary to draw conclusions as to Plaintiff's condition. Dr. Boyce testified at the initial hearing that a consultative examination was necessary for him to render an opinion, because the record was incomplete as to Plaintiff's use of his left side. Once he received that examination report, however, Dr. Boyce rendered his own opinion. That opinion, though based in part upon the information in Dr. Hess' examination *report*, was not obligated to concur with Dr. Hess' examination *conclusions*. Contrary to Plaintiff's argument, the record was thus complete at the second hearing. Dr. Boyce had a sufficient evidentiary foundation upon which to render testimony as to Plaintiff's physical capabilities.

The defendant asserts that, regardless of whether the ALJ should have given greater weight to the findings of Dr. Hess or Dr. Boyce, the difference between the two was largely immaterial. He points out that the vocational expert concluded, based upon Dr. Boyce's residual functional capacity assessment, that there were approximately 9,500 light and 5,500 sedentary jobs that a hypothetical plaintiff could perform. (R. 665). Upon questioning, the vocational expert stated that Dr. Hess' finding that Plaintiff required "library quiet" was so restrictive that it eliminated almost all possible jobs. (R. 667.) However, the expert testified, if this requirement were eliminated from Dr. Hess' RFC, the remainder of this RFC would still permit Plaintiff approximately 3,300 light jobs and 2,200 sedentary jobs. (R. 667.) Therefore, argues the Defendant, the only important difference between the Hess and Boyce opinions was the "library quiet" requirement – a requirement not supported by the medical record.

As Plaintiff did not file a reply brief in this case, he does not address this argument directly. It is persuasive. The only extant medical evidence concerning Plaintiff's hearing is the audiogram mentioned by Dr. Wade in his June 16, 2005 letter. (R. 276.) Dr. Hess opined in his examination that Plaintiff "has marked decrease in hearing in his left ear" (R. 610), and found that Plaintiff's impairments affected his "ear and hearing" and that he required "Quiet (Library)". (R. 619-620.) However, he offered no

8

> elaboration on this restriction or commentary on how he had reached this
> conclusion (and made no reference to Dr. Wade's audiogram). The Court
> cannot find that Dr. Hess' findings on this subject were substantially
> supported by evidence. Dr. Boyce, for his part, interpreted Dr. Wade's
> audiogram to find that Plaintiff's hearing loss was "excessive", and "I
> would say he should probably be in an office environment... [s]o there'd
> be a little, little restriction on his ears." (R. 659.)
>
> Given an unsupported opinion of library-like conditions, and the only
> available medical evidence indicating extensive but not overwhelming
> hearing impairment, the ALJ was substantially justified in implicitly
> rejecting Dr. Hess' more restrictive environmental sound requirements
> and adopting those of Dr. Boyce instead. Moreover, the vocational expert
> testified that a significant number of jobs were available either the Hess or
> Boyce RFCs, so long as the plaintiff required only office-like and not
> library-like quiet. The Court will therefore uphold the ALJ's finding,
> based upon the Boyce hearing opinion and the vocational expert's
> testimony, that jobs exist in significant numbers in the national economy
> that Plaintiff can perform.

November 18, 2009 Report and Recommendation, Doc. 16, at pp. 13-16.

Ultimately, the administrative law judge is the finder of fact. Here there is substantial evidence supporting Dr. Boyce's analysis of the medical record; therefore, the administrative law judge did not err by relying on Dr. Boyce.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED**. The

decision of the Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant. This action is hereby **DISMISSED**.

/s/ 3-17-2010
Edmund A. Sargus, Jr.
United States District Judge